LAWSON & MACMURRAY, Appellant, *v.* FRED S. RADFORD and Others, Respondents.

Second Department, June 24, 1927.

Liens — materialman's lien on boat, under Lien Law, § 80 — lienor is foreign corporation — materials were furnished to shipbuilder who had contracted to make boat for one of defendants — said defendant paid all that was due and finally completed boat himself — action is, under Lien Law, § 104, on bond given to release warrant of seizure issued under Lien Law, § 88 — said defendant is not protected by Lien Law to extent of payments made — title to boat was in builder when lien was filed — undertaking is not in words of Lien Law, § 102 — court granting warrant had jurisdiction, under Lien Law, § 86 — evidence does not establish that lien was filed within ninety days as required by Lien Law, § 82.

This is an action, under section 104 of the Lien Law, to recover on an undertaking given to obtain the discharge of a warrant, issued pursuant to section 88 of the

Lien Law, for the seizure of a boat under a materialman's lien filed under section 80 of the Lien Law. One of the defendants, the contractor for the construction of the boat, which was a corporation, since dissolved, was paid therefor as the boat was being constructed. The boat was never finished, and the defendant, the person for whom the boat was being built, took the unfinished boat and finished it at his own expense, without knowledge that the plaintiff, a foreign corporation, had or claimed to have any lien for materials furnished.

The owner of the boat is not protected by the Lien Law to the extent of the amount paid thereon, and a lienor having a valid lien can enforce the same notwithstanding the fact that said owner has paid to the contractor all that is due on the boat.

The title to the boat, as well as possession, was in the shipbuilding corporation at the time the materialman filed his lien, notwithstanding the person for whom the boat was being built had paid for all the work and material as fast as the work was done.

Notwithstanding that section 86 of the Lien Law provides that the lienor may make application for the warrant to a justice of the Supreme Court in the judicial district in which the lienor resides, or in the county adjoining such district, the court had jurisdiction of the application by the plaintiff, a foreign corporation for the warrant of seizure.

Furthermore, that question cannot be raised in this action on an undertaking given to discharge the warrant, since the defendants had the right to raise the question on the application for the warrant and did not do so, but instead of raising the question voluntarily filed, prior to the return day of the application for the warrant, the undertaking to obtain the release of the vessel, and thereby voluntarily substituted the undertaking for the vessel seized.

Under the evidence, it cannot be determined whether the plaintiff complied with section 82 of the Lien Law, by filing notice of the lien within ninety days after the debt became due. The notice should have been filed within that time without regard to whether or not the material furnished had actually been incorporated into the boat.

Under the circumstances, the judgment entered upon the dismissal of the complaint at the close of the entire case must be reversed and a new trial granted.

APPEAL by the plaintiff, Lawson & MacMurray, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 24th day of May, 1926, upon the dismissal of the complaint at the close of the entire case, and also from an order entered in said clerk's office on the 25th day of May, 1926, denying plaintiff's motion to set aside " the direction of a verdict."

The plaintiff, a foreign corporation carrying on business in Hoboken, N. J., commenced this action on May 27, 1924, pursuant to section 104 of the Lien Law, to recover $1,285.46, with interest from September 25, 1923, from the defendants Radford and Freiberger, sureties upon an undertaking given to obtain a discharge of a warrant issued March 7, 1924, by Mr. Justice ASPINALL to the sheriff of the county of Kings, pursuant to section 88 of the Lien Law, for the seizure of a fishing boat, the property of the defendant

Rau, under a materialman's lien filed against said vessel by the plaintiff on November 22, 1923.

It appears that in January, 1923, the Nyack Shipbuilding Corporation of Nyack, N. Y., entered into a written contract with defendant Rau to build for him a fishing boat for the sum of $9,050. The shipbuilding corporation agreed to complete the boat on or before May 15, 1923, and to deliver it at the shipyard in Nyack upon completion of the payments to be made as the work progressed. The builder agreed to keep the boat insured against fire and marine risk until delivery, the policy to be made payable to the builder and the " owner " as their interest might appear.

The defendant Rau fully complied with his part of the agreement, and paid to the shipbuilding company all moneys due as the work progressed. The shipbuilding company began work on the vessel about February, 1923. In May, 1923, the planking on the boat was under way, but the boat was not completed according to the contract on May 15, 1923, nor was it ever completed by the shipbuilding company; the last work done on the boat by the builder was in December, 1923. It is conceded that the shipbuilding company could not complete their contract, and that Rau had to take the boat from the shipyard and complete it. While the shipbuilding company did not go into bankruptcy, it dissolved and a receiver was appointed. It appears that Rau brought an action to recover possession of the uncompleted vessel. He had paid the shipbuilding company for all the work done and material furnished as far as the work had progressed; in fact, he had paid most of the contract price. The shipbuilding company surrendered the uncompleted vessel to Rau, who, took it to Sheepshead Bay where it was completed by Rau at his own expense.

There is no suggestion that Rau ever heard of the plaintiff Lawson & MacMurray, or that he had any knowledge of any claim against the shipbuilding company for materials furnished, or notice of any lien of any kind against the vessel. He never heard of the plaintiff or its alleged claim until March, 1924, when the sheriff seized the vessel under the warrant issued by Mr. Justice ASPINALL.

The plaintiff lumber dealer asserts a claim for $1,285.46 for materials furnished to the shipbuilder for the vessel.

At the trial, the complaint was dismissed upon the merits at the end of the entire case.

*Wilbur F. Earp* [*Franz Neilson* with him on the brief], for the appellant.

*James Gillin* [*Henry W. Baird* with him on the brief], for the respondents.

KELLY, P. J. This action is brought under the New York State Lien Law (Consol. Laws, chap. 33, art. 4). There is no claim made that the contract to build the vessel gave rise to a " maritime " lien any more than the building of a house or doing any work upon any article for which a lien may attach to the subject of such work. (*Coryell* v. *Perine*, 6 Robt. 23; *Grant Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469; *People's Ferry Company of Boston* v. *Beers*, 20 How. [U. S.] 393; *Roach* v. *Chapman*, 22 id. 129; *The Steamer St. Lawrence*, 1 Black [U. S.], 522.)

The lien here asserted by the materialman is claimed by the plaintiff to be a debt contracted by the builder of the vessel, the shipbuilding company, for material furnished toward the building of the vessel. This is a lien expressly referred to in the Lien Law (*supra*, § 80).

The learned trial justice expressed himself very forcibly during the course of the trial, concerning what he conceived to be the manifest injustice of the plaintiff's attempt to maintain this so-called lien for materials upon the facts here disclosed. He said: " The Court: Of course, we are not making any progress. I think you can shorten this up considerably, because I am perfectly willing to hold in these cases, and believing it to be absolutely right, gentlemen, that under the circumstances there can be no liability of the owners and, therefore, no right of recovery. When the builders, without the knowledge and consent and approval of the owner, went out and bought material and put it into a vessel, and the owner having paid the builders the entire bill, I am quite willing to hold that that statute never meant that the boat or the owner of the boat was liable under any circumstances after he had once paid his bill. If his bill was not paid, I might be willing to hold that the vessel or the stipulation releasing it is liable up to the amount unpaid to the builder; but I will never be a party to let a case like this go through. Mr. Earp: Well, I apprehend the rule that I am contending for now is the rule that has been in all these cases under that statute away back in 1862* and prior to that. The Court: Could you conceive of a rule so unjust and based entirely without reason or foundation? Was the owner of these vessels bound to go up there and go around and say, ' Did you sell any paint to this builder? Did you sell any lumber? Did you sell any nails? ' before he can pay the builder? Mr. Earp: In building a boat it is nearly all timber, and they know that he did have to buy the timber from somebody. Now, whether there was any talk between either of these owners and the plaintiff

---

* See Laws of 1862, chap. 482.—[REP.

I do not know. If your Honor will allow me just a minute I will ask him that question and see what he knew about it. No, sir. We will have to stand right on that proposition of law, that I maintain that it is immaterial whether they paid or not. The Court: Now, let us get your record right, because I have told you both what I am going to do with these cases. Now, get in all your record, and I do not see that you need very much for yours. I am not going to let any case like this go to the jury or let a recovery be had under such circumstances. Mr. Earp: Then I simply want to prove — The Court: I do not want to hamper you. I want you to get your record right, Mr. Earp. I want you to be fully protected so that it might be properly reviewed on appeal."

And he reiterated these views in his opinion filed.

In the matter of mechanics' liens upon real estate, a subject dealt with in article 2 of the Lien Law, we know that an owner of real property is protected as to payments made to a contractor in good faith. The lien attaches only to any balance due. The claim advanced by the plaintiff in the case at bar would compel Rau, who contracted in good faith with the shipbuilding company in Nyack to build this vessel and who duly paid the shipbuilding company for all labor and materials furnished, to pay a second time for the lumber which went into the vessel, although he had no knowledge of the transactions between the shipbuilding company and the plaintiff from whom the lumber was purchased and never heard of the lumber dealer or the claim advanced until after he had been obliged to recover his vessel and to complete it at his own expense.

At the conclusion of plaintiff's case in chief, defendants' counsel moved to dismiss upon the ground that plaintiff had failed to establish a cause of action.

The learned judge promptly denied the motion, and defendants excepted.

Then the court said, " Now, do you rest? " and defendants' counsel answered, " We will rest. We will stand on our chances. The Court: You will rest? What did you say, you won't rest? Mr. Gillin: Yes, we will rest, and now I renew my motion. The Court: Now, Counsellor, do not let me influence you at all, because I am very often wrong, but I think you are in a better position. You have no question here really that you want to contradict? Mr. Gillin: No, I do not think they have proved any case. The Court: Well, you can't be in a better position than ever? Mr. Gillin: No. The Court: Then you rest? Mr. Gillin: We rest. The Court: Defendant rests. Mr. Gillin: Now, I renew the

motion and also move on the whole case for a dismissal of the complaint on the ground no cause of action has been established; and also, in order to complete the record, on the further ground that there is no jurisdiction."

The learned judge then proceeded to deliver an oral opinion in which he continually referred to defendant Rau, who made the contract with the shipbuilders to construct the boat, as the " owner." But it seems to me that defendant Rau was not the owner of the vessel. The vessel in course of construction was upon the ways or in the yard of the shipbuilder. Until completion and delivery, not only possession of the boat but title to the boat was in the shipbuilding company.

True, the defendant Rau had been making payments to the shipbuilder under his contract. This lien was filed on November 22, 1923, while the boat was still in the shipbuilder's possession, and apparently while the work of construction was going on, because plaintiff's witness, the shipbuilder, says: " The last work was done I think in December."

After this, " in December," Rau, with the consent of the shipbuilder, took the boat from the possession of the shipbuilder in Nyack and brought it to Sheepshead Bay, where it was completed by Rau. The transaction is stated by Mr. Baird (defendants' counsel): " Your Honor, the boats were not completed and Mr. Gage told us that he was unable to go on with the work. After we had brought a suit for the appointment of a receiver to take possession of these uncompleted vessels — we had paid in most of the contract price — it was then arranged between his attorney and myself that we would take the matter in hand, in conjunction with a naval architect, Mr. Whitaker. Mr. Whitaker took charge of the work and the arrangements, we supplied the necessary money, and the boats were finished and bills of sale given, and no liens of any kind were filed. We were completely surprised when this suit was brought against us."

This is not very satisfactory. Mr. Baird says: " We had paid in most of the contract price." I suppose this means that Rau had paid the installments due under the contract to date — not " *most of the contract price*," but *all* of the contract price then due. And Mr. Baird says that " bills of sale " were given. Given by whom? I wou d say that the only " bill of sale " required would be a bill of sale from the shipbuilding company to Rau. I cannot understand what other bill of sale would be required.

The contract in *Lawson & MacMurray* v. *Rau* (221 App. Div. 278), decided herewith, does not contain any agreement by which Rau, upon making the payments, is to " be absolute owner of the

boat to the extent of the value of the money paid." The Rau boat is not to be delivered by the shipbuilder until payment of the final installment. The *builder* is to keep the boat insured, " such policy to be made payable to the builder and owner as their interest may appear." I still think that *title* to these boats, as well as the *possession,* was in the shipbuilding corporation at the time the materialman filed his lien.

A mechanic's lien filed against real property attaches only to any balance due from the owner to the contractor. This by express provision of the Lien Law. There is no such provision in the article having reference to liens on vessels.

Measuring up the " fundamental justice " between the materialman whose lumber goes into the construction of the boat by the shipbuilder, and the customer for whom the builder is constructing the boat and who is paying in his good money in installments to the shipbuilder as the work goes on, is not such an easy task. There is a good deal to be said on both sides. That the statutory lien of a materialman is constitutional, and that a materialman's lien is valid while the uncompleted vessel still remains in the possession of the shipbuilder to whom the materialman has supplied the lumber, appears to be established by *Sheppard* v. *Steele* (43 N. Y. 52, opinion by FOLGER, J.). The *builder* has a common-law lien on the vessel as long as it remains in his possession. (*Vibilia,* 1 W. Rob. [Eng.] 1, 6; *Woods* v. *Russell,* 5 B. & Ald. 942; 7 Eng. C. L. 512; *Ex parte Willoughby,* L. R. 16 Ch. Div. [Eng.] 604; *The Marion,* 1 Story, 68; 16 Fed. Cas. No. 9,087; *Downey* v. *Lozier Motor Co.,* 138 Fed. 173. See, also, *The General Smith,* 4 Wheat. 438; *The B. F. Woolsey,* 7 Fed. 108; *The Two Marys,* 10 id. 919.) As to statutory liens on vessels, see *King* v. *Greenway* (71 N. Y. 413); *Phœnix Iron Co.* v. *" Hopatcong "* & *" Musconetcong "* (127 id. 206); *The Atlantic City* (220 Fed. 281).

The case at bar is an action against the sureties upon an undertaking duly executed by the defendants to obtain the discharge of the vessel from a warrant issued by Mr. Justice ASPINALL to enforce the lien filed by the plaintiff, materialman.

The complaint recites the filing of the lien, the application made to Mr. Justice ASPINALL, justice of the Supreme Court, at chambers in the county of Kings, " that being the county in which said vessel then was," for a warrant to enforce the lien; the issuance of a warrant by Mr. Justice ASPINALL (Lien Law, § 88), with an order to show cause why the vessel should not be sold to satisfy the lien, returnable before the justice on March 27, 1924. But without waiting for the return day of this order, at which the jurisdiction of the justice to entertain the proceedings might be raised, defendant Rau applied

to Mr. Justice ASPINALL pursuant to Lien Law, sections 101–103, for an order discharging the warrant upon his filing an undertaking.

And the defendants executed the undertaking which is the basis of the action, it was approved by the justice, delivered to the plaintiff lienor, and the vessel was released.

The plaintiff insists that the defendants are estopped from now raising any question as to Mr. Justice ASPINALL's jurisdiction. The defendants are insisting that plaintiff, a non-resident corporation, had no right to institute the proceedings to enforce the lien before Mr. Justice ASPINALL, because the statute (Lien Law, § 86) provides that the lienor must make the application for the warrant to a justice of the Supreme Court at chambers " in the judicial district in which the lienor resides or in a county adjoining such district." Defendants say the plaintiff is a New Jersey corporation; therefore, the application was not made to a justice in the district " in which the lienor resides," etc.

In other words, this argument would leave the lienor with a valid lien, but no means of enforcing it under the statute. I presume that a valid lien could be enforced in a court of equity. But there is no question that the case at bar is an action to enforce the lien by virtue of the Lien Law (§ 86 *et seq.*). It is provided in section 91 that any issue raised in such a proceeding shall be tried " as are other issues in a court of record, without a jury, before the justice granting the order." Of course, this trial was not before Mr. Justice ASPINALL without a jury, but in Part I, Trial Term, before the justice then presiding *and a jury*, and the judgment recites that the action was regularly brought on and reached for trial at Supreme Court, Kings county, Trial Term, Part I, in April, 1926, two years after Mr. Justice ASPINALL had made the order discharging the warrant, and Mr. Justice ASPINALL apparently never made an order fixing the time of trial as required in section 91 of the Lien Law. The statute says (§ 102) that the undertaking given to obtain the discharge of the warrant shall be " to the effect that the person making the application for the discharge of the vessel will pay the amount of all claims and demands which shall be established to be due to the person in whose behalf the warrant was issued, *and to have been a subsisting lien on the vessel at the time of its issue.*"

The defendants gave an undertaking, not in the words of the statute, but that Rau " will pay the amount of all claims and demands which shall be established to be due to Lawson & MacMurray in whose behalf the warrant was issued and claiming thereunder to have a subsisting lien on said vessel at the time of the issuance of said warrant not exceeding the above-mentioned sum with interest." So that, on its face, the undertaking does not appear

to depend upon plaintiff's establishing that it had a subsisting lien on the vessel at the time the warrant was issued. It is an undertaking to pay the claim of Lawson & MacMurray established to be due.

The learned counsel for plaintiff does not make the point, and he does not join the shipbuilding company as a party defendant in the action. It is difficult to understand how the amount due Lawson & MacMurray, the materialmen, can be adjudicated in this action without the presence of the Nyack Shipbuilding Corporation, the shipbuilder, as a defendant; and when the learned trial justice vigorously denounced the procedure and the materialman's attempt to collect its bill, he asked the learned counsel for the *plaintiff* concerning the reasonableness and equity of his client's claim: " The Court: Doesn't it kind of shock you? Mr. Earp: It does." That the claim of the materialman is a claim recognized in England at common law for a century, and recognized by our own statute and similar statutes of other States in the Union, seems to me to be indisputable. While the reasoning of the learned trial justice in his oral opinion at the trial, and in his written opinion filed upon the denial of plaintiff's motion to set aside the " direction of a verdict " (no verdict was directed), certainly seems forcible, I cannot see how the dismissal of the complaint upon the merits can be sustained upon the ground stated by the learned judge. The counsel for plaintiff, appellant, argues in his points: " The learned Trial Justice said, referring to the plaintiff's contention, ' the injustice of such a rule is obvious ' (fol. 351). Is it? As between a materialman who trusts his material to a builder, knowing that he has a lien to protect him, and an owner who trusts his money to the same builder, not seeing to it that the money was properly applied, and knowing all the time that the vessel is answerable, which of the two is entitled to the most sympathy — assuming for the argument that the court has the power to entertain such defense? The answer seems to be sufficiently given in *Sheppard* v. *Steele* (*supra*)." And (at p. 18): " The reason given in the opinion for the ruling is: ' In the absence of binding authority to the contrary I will not allow a judgment for plaintiff which will be so unfair and inequitable as that sought here ' (fol. 349), and ' it could not have been the intention of the Legislature to require an owner of a vessel to pay for materials ordered by the builder, and once paid for by the owner.' (fol. 351.) It is within the province of the Court to interpret the meaning of a statute, but it has no power to disregard a law because it may be deemed unfair or inequitable." I am inclined to think he is right.

As to the defendants' claim that the entire proceeding was

without jurisdiction because the warrant was not applied for to a judge in the county in which the lienor resided, if we grant that the materialman had a lien on the uncompleted vessel in possession of the shipbuilder, there must be some way to enforce it. The lienor cannot be denied relief simply because it is a New Jersey corporation. The appellant argues that the language of the statute (§ 86) is not that the application *must* be made to a justice in the judicial district where the lienor resides, but that it provides that the lienor *may* make application to such a justice, and he argues that there being no justice of the Supreme Court residing in the county of the lienor's residence out of the State, such application may be made to any justice of the Supreme Court. But can the defendants raise any such question? They had the right to appear before Mr. Justice ASPINALL under his order to show cause granted pursuant to section 89 of the act, and to question his jurisdiction. Instead of doing this in advance of the return day, they voluntarily filed the undertaking above referred to, and obtained the release of the vessel. They voluntarily substituted the undertaking for the vessel attached. The appellant cites cases holding that the giving of the undertaking was a waiver of any " technical defect " in the proceeding. (*Happy* v. *Mosher*, 48 N. Y. 313, 318; *Ring* v. *Gibbs*, 26 Wend. 502, 510; *Wilson* v. *Lawrence*, 82 N. Y. 409, 412.)

Much has been written on the nature of these statutory liens upon vessels. The questions of liens upon vessels by statute, and the relative equities of the parties, are discussed in *Rounds & Jesse* v. *The Cloverport F. & M. Co.* (159 Ky. 414, MILLER, J.); *Briggs* v. *A Light Boat* (7 Allen [Mass.], 287, 295, BIGELOW, C. J.) and by Mr. Justice CURTIS of the United States Supreme Court, sitting as circuit judge, in *The Young Mechanic* (2 Curtis Cir. Ct. 404); also in our own Court of Appeals in *Sheppard* v. *Steele* (43 N. Y. 52, FOLGER, J.).

The record in the case at bar is not very satisfactory. By express provision of the statute (§ 82, as amd. by Laws of 1910, chap. 182) the debt due the materialman ceased to be a lien upon the vessel " unless the lienor shall, within ninety days after the debt becomes due," file a notice of lien, etc. This limitation does not depend upon the progress of the work done on the vessel by the shipbuilder. The evidence indicates that the shipbuilder did work upon the vessel after the date of the filing of the lien of the materialman. But the materialman had nothing to do with the construction of the vessel. His lien was limited by the date when the debt of the shipbuilder became due. It was not extended because the shipbuilder delayed in using the material. The bills introduced in evidence, rendered by the ship-

builder for the material furnished, expressly state that the money is due " 30 days after date of delivery," and if this was the due date, it would appear that the notice of lien was not filed within ninety days after the debt became due. The complaint alleges that the debt became due on September 25, 1923, and that the lien filed on November 22, 1923, was within the ninety-day period prescribed in the statute. The answer denies this allegation. The evidence is not satisfactory as to when the material was delivered or as to when the debt became due. Whether the transactions between the materialman and the shipbuilding company were sufficient to extend the due date of the debt as against the defendant Rau, cannot be determined upon the record before us.

I think the judgment should be reversed and a new trial granted at which the facts concerning this issue may be ascertained.

The judgment and order appealed from should be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.

YOUNG, KAPPER, LAZANSKY and HAGARTY, JJ., concur.

Judgment and order reversed upon the law and the facts, and new trial granted, with costs to appellant to abide the event.